UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY TEENIER,

    Plaintiff,

v.

CHARTER COMMUNICATIONS, LLC,

    Defendant.

_____/

Case No. 16-cv-13226

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
PATRICIA T. MORRIS

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE TO EXCLUDE AN EXPERT WITNESS AND REQUESTING A MORE DETAILED EXPERT REPORT [9]**

**I. INTRODUCTION**

On September 7, 2016, Terry Teenier ("Plaintiff") filed a complaint against Charter Communications, LLC ("Defendant"). Dkt. No. 1. Plaintiff's complaint alleges that Defendant violated the Family and Medical Leave Act (FMLA) by retaliating against Plaintiff for exercising FMLA rights. 29 C.F.R. § 825.220(c). *Id.*

Presently before the Court is Defendant's Motion in Limine to exclude the report and testimony of Plaintiff's Expert Economist, Frank Stafford. Dkt. No. 9. Defendant argues that Stafford's testimony is not supported by sufficient factual foundations and should therefore be excluded. *Id.* at 2 (Pg. ID 60). For the reasons stated herein, Defendant's motion is granted in part and denied in part. Plaintiff

1

shall amend or supplement his Expert Economist's report or the report will be stricken.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the use of expert testimony. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008). Rule 702, as amended in 2000, reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *Id.*

Rule 702 provides that a trial court may permit an expert witness given the satisfaction of three requirements. *Id.* at 528–29. First, the witness must be qualified by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Second, the proffered testimony must be relevant and must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Lastly, the expert's testimony must be reliable. *Id.* Courts determine reliability by considering whether the testimony is based upon "sufficient facts or data," whether the testimony is the product of "reliable principles and methods," and whether the expert "has applied the principles and methods reliably to the facts of the case." *Id.*

The Supreme Court has explained that district courts carry an obligation to act as a gatekeeper ensuring the reliability of expert testimony. *Kumho Tire Co.*, 526 U.S. 137, 147 (1999). However, "rejection of expert testimony is the

exception, rather than the rule." *United States v. LaVictor*, 878 F.3d 428, 442 (6th Cir. 2017).

In *Daubert*, 509 U.S. at 589–95, the Supreme Court provided four factors a court may use when determining the reliability of an expert witness's testimony. The factors include (a) the theory's testability, (b) whether it has been a subject of peer review or publication, (c) the "known or potential rate of error," and (d) the "degree of acceptance within the relevant community." *Id*. The Sixth Circuit has recognized that the *Daubert* factors "are not dispositive in every case" and should only be applied "where they are reasonable measures of the reliability of expert testimony." *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001).

The Federal Rules of Civil Procedure further dictate procedural requirements for experts' written reports. Rule 26(a)(2)(B) requires that an expert report contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B). In interpreting Rule 26(a), the Sixth Circuit has explained that "a report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report

3

must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *R. C. Olmstead, Inc. v. C.U. Interface, LLC,* 606 F.3d 262, 271 (6th Cir. 2010) (internal quotation and citation omitted).

### III. DISCUSSION

In the present motion, Defendant does not dispute Stafford's qualifications as an expert economist nor the relevance of his report. Dkt. No. 9 (Pg. ID 2). Rather, Defendant argues that Stafford offered mere speculative assumptions not grounded in fact nor based on reliable principles or methods. *See id.* at 7–16. In total, Defendant challenges four assumptions made by Stafford regarding the calculation of damages: work-life expectancy, projected inflation rate, fringe benefits percentage, and projected future earnings. *Id.*

**a. Work-Life Expectancy**

The first challenge regards the work-life expectancy determination suggesting Plaintiff will work until 67 years of age. Dkt No. 9-2 (Pg. ID 87). Defendant, however, asserts that the study referenced by Stafford actually indicates a retirement age of just over 64 and 1/2 years. *Id.* Therefore, Defendant asserts that flawed methodology produced unreliable conclusions and should therefore be excluded.

In the report, Stafford fails to proffer any explanation for why he chose to use age 67 for calculations. *Id.* Though, it is possible that age 67 was selected

4

because it currently marks the threshold where citizens become eligible to receive full Social Security benefits. Nevertheless, this is not suggested anywhere in the evidence. In *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 727 (6th Cir. 2012), the Court concludes that testimony should be excluded if it is based on "facts that [a]re clearly contradicted by the evidence." *Id.* (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)).

Stafford relies directly on a *Journal of Forensic Economics* article entitled, "Worklife in a Markov Model with Full-time and Part-time Activity." Dkt. No. 9-3 (Pg. ID 87). The article seemingly shows that a contradictory retirement age based on a multitude of factors should have been used when determining Plaintiff's work-life expectancy. *Id*. The report provides a table indicating that Plaintiff only has 27.57 working years left—of which 2.45 years are part time. *Id*. Given this information, the estimated retirement age for Plaintiff should therefore be around 64 and 1/2 years of age. The Court is left to speculate as to why Stafford chose age 67 because his own evidence suggests a different retirement age and he fails to provide any justification for this determination.

Plaintiff seeks to remind the Court that Defendant may cross examine Stafford at trial and utilize rebuttal experts to counter conclusions. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

5

means of attacking shaky but admissible evidence."). However, this issue is not yet one of weight. Rather, the Court must act as a gatekeeper to ensure reliability before a fact finder can make determinations.

In conclusion, because Stafford's projected retirement age for Plaintiff appears to be contrary to the report upon which he relied, the report should be amended or supplemented to explain this discrepancy, or the report should be excluded.

### b. Projected Inflation Rate

Secondly, Defendant challenges Stafford's determination of a flat inflation rate of 3%. Dkt. No. 9-2 (Pg. ID 78). Again, Stafford's report indicates no basis for the rate's determination and instead just assumes the number as a given. *Id.*

Predicting future rates of inflation remains a very speculative practice by nature. *See Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 528 (1983). Because so many factors must be taken into account, including hypothesizing about future economic conditions, the predictions often have a wide range of acceptable estimates.

Defendant supports their argument by offering evidence that the average inflation rate over the last ten years hovered around 2%. Dkt No. 9-4 (Pg. ID 110). From this, Defendant asserts that Stafford's usage of 3% is inaccurate and should be excluded. However, this historical data does not prove what the inflation rate

6

will be over the next thirty years. In particular, the instability of the Great Recession may have skewed numbers over the last ten years, rendering them a poor indicator of future predictions.

Finally, a trial court must be sure not "to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." FED R. EVID. 702 advisory committee's note to 2000 amendment. Defendant's alternative version of the facts on this issue must be left for determination by the fact finder. Simply, the projected inflation rate does not amount to an issue of reliability.

Given Stafford's credentials and experience in the discipline of economics, combined with the lack of a sufficient showing otherwise, the 3% calculation does not warrant exclusion.

### c. Fringe Benefits Percentage

The third issue regards Stafford's estimate of fringe benefits percentage. Stafford's report suggested 24% of Plaintiff's annual wages made up fringe benefits; a percentage admittedly based upon the national average. Dkt. No. 9-2 (Pg. ID 78). Defendant challenges that percentage and argues that historical trends of Plaintiff's actual fringe benefits show they were 21.4%, and thus the estimate is misguided and should be excluded.

It is vital to note that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert," *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). And again, if the facts of the case and evidence prove contrary to an expert's determination, the report should be excluded. *Andler,* 670 F.3d 717, 727. Additionally, the Sixth Circuit recognized that an expert must "employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *See Kumho*, 526 U.S. at 152.

In this case, Stafford provided a justification for his determinations. However, the assertion that the numbers were based solely on a national average does not reach a sufficient standard of reliability in terms of methodology. Failing to account for precise and contrary factual data and instead using a national average does not appear to rise to the intellectual rigor expected from a forensic economist. By keeping the justification brief, Stafford also failed to provide any sort of clarification for why he used a national average as opposed to Plaintiff's historical data. Had there been some sort of explanation, the issue becomes one of weight, which should be left to the trier of fact. However, the Court is again left to speculate as to why Stafford used a national average instead of the known fringe benefits percentage.

Leaving the Court to speculate on reliability begs the assumption that the Stafford's report is not "supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. The Sixth Circuit has since interpreted "good grounds" to mean "a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal*, 527 F.3d at 530. Stafford thereby subjected himself to the assumption that he failed to use "good grounds" and that his report instead relied on unsupported speculation.

Accordingly, the determination of fringe benefits percentage provided by Stafford should either be amended or supplemented to reflect the evidence.

### d. Future Earning Capacity

Lastly, Defendant insists that Stafford ignored the facts and reported Plaintiff's replacement earnings incorrectly. Once again, the rule provided by the Sixth Circuit explains that testimony should be excluded if it is based on "facts that [a]re clearly contradicted by the evidence." *Andler,* 670 F.3d 717, 727 (6th Cir. 2012).

While Plaintiff's W2 forms indicate he earned $76,764 in 2014 and $27,555 in 2015, Stafford estimates that he earned $38,485 and $39,455, respectively. Dkt. No. 9-2 (Pg. ID 80, 85). How and why Stafford reached these conclusions remains a mystery. In his written report, Stafford recognizes numbers that correspond with the W2 forms, however they do not translate over to the excel sheet used for

9

calculations. *Id*. Whether carelessness or failure to provide an explanation created the discrepancies, the calculated replacement income suffers from flawed methodology and is not reliable.

Plaintiff asserts that Stafford's conclusions are solely an issue of weight as opposed to admissibility and that this motion should only take methodology into consideration. However, as the Supreme Court noted in *General Electric Co. v. Joiner*, 522 U.S. 136, 146, "conclusions and methodology are not entirely distinct from one another." This "garbage in, garbage out" theory reflects Defendant's assertion that the methodology is unreliable and thereby also led to false conclusions.

In conclusion, because Stafford offers no explanation for the conflicting numbers, Stafford's report should be excluded unless adequately amended or justified.

### e. *Daubert* Factors Analysis and Rule 26(e) Supplementation

Each baseless assumption likely suffers under every factor the *Daubert* Court highlights. 509 U.S., at 589–95. The failure to provide reasoning for such conclusions implicates both the (a) theory's testability and (b) whether it has been a subject of peer review or publication. Further, the (c) "known or potential rate of error," and the (d) "degree of acceptance within the relevant community" suffer

from the contradictory facts that are seemingly overlooked. By only looking at the factors, the Court should strike Stafford's report.

However, the *Daubert* Court highlighted that the aforementioned factors are not meant to be dispositive; therefore while the analysis favors exclusion, they provide only guidelines. *Id*. Therefore, the factors—while helpful and illuminating—only go so far.

Federal Rule of Civil Procedure 26(e)(1) provides the Court with an alternative to striking the entirety of Stafford's report. Under Rule 26(e)(1):

> A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response:
>
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
>> (B) as ordered by the court.

Stafford's report was a written report provided by an expert, pursuant to Rule 26(a)(2)(B), and thus the Court may order it to be supplemented or corrected. The Court will grant Plaintiff an opportunity to explain or correct the apparent errors in the data upon which the report relied. Should Plaintiff fail to supplement or correct the report, the Court will exclude the report because the conclusions are reliant on undisputed data errors.

11

## IV. CONCLUSION

Based on the above analysis, the Court will request an amended or supplemented report highlighting and explaining the aforementioned areas of concern. Any alterations are to be made with evidence that was readily available at the time Stafford drafted the original report—no new or "surprise" evidence shall be incorporated into the amended report. Plaintiff has **21 days** from the entry of this order to submit an amended or supplemented report. If this action does not adequately address the flaws of the report, then Plaintiff's Expert Economist report will be excluded.

IT IS SO ORDERED.

Dated: July 25, 2017

                                                                        s/Gershwin A. Drain
                                                                     HON. GERSHWIN A. DRAIN
                                                                     United States District Court Judge